# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

VALA MOGHADDAM and NAHID SHAREI,
    Plaintiffs,

       v.

MICHAEL POMPEO *et al.*,
      Defendants.

Civil Action No. 19-668 (CKK)

## MEMORANDUM OPINION
(January 22, 2020)

Pending before the Court is Defendants' Motion to Dismiss, ECF No. 10. Defendants have moved to dismiss the operative Petition for Writ of Mandamus and Complaint for Declaratory and Injunctive Relief ("Compl."), ECF No. 3–1, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and for failure to state a claim. Upon consideration of the briefing,[1] the relevant legal authorities, and the record as relevant to this Motion, the Court **DENIES** Defendants' Motion. In particular, the Court finds that it has jurisdiction over Plaintiffs' claims under the Administrative Procedure Act ("APA") and accordingly concludes that it does not need to reach the question of whether it has jurisdiction under the Mandamus Act. Moreover, the Court finds that Plaintiffs have sufficiently pleaded the challenged claims under the APA.

---

[1] The Court's consideration has focused on the following:
- Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 10;
- Pls.' Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n"), ECF No. 12, along with the related Exhibits ("Pls.' Exhibits"), ECF No. 13;
- Notice of Errata to Pls.' Opp'n to Defs.' Mot. to Dismiss ("Pls.' Errata"), ECF No. 14; and
- Reply Mem. in Supp. of Defs.' Mot. to Dismiss Pls.' Compl. ("Defs.' Reply"), ECF No. 16.

In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering a decision. *See* LCvR 7(f).

# I. BACKGROUND

In short, Plaintiffs allege that Defendants have denied them timely adjudication of Plaintiff Nahid Sharei's visa application and associated waiver under Presidential Proclamation 9645, "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public-Safety Threats," which President Donald Trump signed on September 24, 2017. *See* 82 Fed. Reg. 45161 (2017) ("Proclamation"). The Proclamation "sought to improve vetting procedures by identifying ongoing deficiencies in the information needed to assess whether nationals of particular countries present 'public safety threats.'" *Trump v. Hawaii*, 138 S. Ct. 2392, 2404 (2018) (quoting Proclamation § 1(a)). To that end, the Proclamation restricted entry for nationals of several foreign states whose systems for managing and sharing such information the President considered inadequate. *See id.*; Proclamation § 2. This includes Iran, for which the Proclamation suspended entry of immigrants, with limited exceptions that are inapplicable here. *See* Proclamation § 2(b).

The Proclamation, however, also allows case-by-case waivers. *See id.* § 3(c). Under the Proclamation, a waiver is appropriate "when a foreign national demonstrates undue hardship, and that his [or her] entry is in the national interest and would not pose a threat to public safety." *Trump v. Hawaii*, 138 S. Ct. at 2406; *see* Proclamation § 3(c)(i). The Proclamation singles out several scenarios as circumstances in which waivers "may be appropriate," including when a "foreign national seeks to enter the United States to visit or reside with a close family member (e.g., a spouse, child, or parent) who is a United States citizen," specifically when "the denial of entry would cause the foreign national undue hardship." Proclamation § 3(c)(iv)(C). In describing the waivers, the Proclamation notes that waivers are "issued by a consular officer as part of the visa adjudication process." *Id.* § 3(c)(iii). Moreover, the Proclamation requires the Department of

Homeland Security and the State Department to issue guidance "elaborating upon the circumstances that would justify a waiver." *Trump v. Hawaii*, 138 S. Ct. at 2423; *see* Proclamation § 3(c)(ii).

Plaintiffs here are concerned with this waiver process as applied to them. Plaintiff Vala Moghaddam is a U.S. citizen while his wife, Plaintiff Nahid Sharei, is an Iranian national. Compl. ¶¶ 21–22. They were married on January 29, 2016. *Id.* ¶ 55. On December 21, 2016, Plaintiff Moghaddam filed a Petition for Alien Relative (an I-130 Petition) on behalf of his wife, Plaintiff Sharei. *Id.* ¶ 57. The petition was approved on July 7, 2017. *Id.* Subsequently, on August 9, 2017, Plaintiffs paid the visa processing fees and submitted Plaintiff Sharei's Immigrant Visa Electronic Application (a DS-260 Application) for an immigrant visa with the U.S. Embassy in Ankara, Turkey. *Id.* She was assigned the consular case number ANK2017702009. *Id.*

Plaintiff Sharei was interviewed by the Consular Section of the U.S. Embassy in Ankara on January 25, 2018. *Id.* ¶ 59. She attempted to submit a waiver request letter pursuant to the Presidential Proclamation during the interview, but it was refused. *Id.* ¶¶ 59–60. Her visa application was refused under Section 212(f) of the Immigration and Nationality Act ("INA") under the Presidential Proclamation. *Id.* ¶ 61. She was, however, referred for waiver eligibility review under the Proclamation. *Id.* She therefore filled out Supplemental Questions for Visa Application (a DS-5535 form). *Id.* ¶ 62.

As of the date of the filing of her Complaint, Plaintiff Sharei had waited nineteen months after filing her immigrant visa application and fourteen months since her interview without any determination of whether she was eligible for a waiver under the Proclamation. *Id.* ¶ 63. The online status checker for her visa application explained that her case was "undergoing necessary administrative processing." *Id.*; *see id.* Ex. F. Although Plaintiffs have inquired as to the status of

her application multiple times, they have not received any useful information indicating when her waiver eligibility will be processed. *Id.* ¶ 82. As of the date of this Memorandum Opinion, Plaintiff has been waiting twenty-nine months (over two years) since filing her visa application and twenty-four months (around two years) since her interview to discover whether she is eligible for a waiver. *See id.* ¶ 63. Plaintiffs claim that as a result of their separation, they have suffered numerous emotional, psychological, and monetary harms. *Id.* ¶¶ 65–76.

Plaintiffs brought this suit on March 10, 2019. *See* Petition for Writ of Mandamus and Compl. for Declaratory and Injunctive Relief, ECF No. 1. Plaintiffs claim that Defendants have a non-discretionary duty to adjudicate both her visa application and the related waiver eligibility under the Proclamation and implementing agency guidance. *See, e.g.*, Compl. ¶ 86. They further claim that Defendants have unreasonably withheld that adjudication. *See, e.g.*, *id.* ¶ 87. Accordingly, Plaintiffs primarily ask for a writ of mandamus and injunction under the APA directing Defendants to adjudicate her visa application, by which Plaintiffs largely mean her waiver eligibility, within fifteen days of the order; issue a declaratory judgment that the delay in adjudicating her waiver eligibility is unreasonable and violates the APA and that she is entitled to adjudication of her visa application within fifteen days of the order; and a writ of mandamus under the Mandamus Act, 28 U.S.C. § 1361, compelling Defendants to adjudicate her visa application (that is, her waiver eligibility) within fifteen days of the order.[2] *Id.* at Prayer for Relief ¶¶ A–E.

---

[2] In their Complaint, Plaintiffs also request a preliminary injunction. Compl. at Prayer for Relief ¶ A. Because Plaintiffs never moved separately for this relief and do not now seek it, the Court does not consider it here.

## II. LEGAL STANDARDS

A. Subject Matter Jurisdiction under Rule 12(b)(1)

A court must dismiss a case pursuant to Federal Rule 12(b)(1) when it lacks subject matter jurisdiction. In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (internal quotation marks omitted) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)); *see also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.")

In reviewing a motion to dismiss pursuant to Rule 12(b)(1), courts must accept as true all factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005) ("At the motion to dismiss stage, counseled complaints as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact."); *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993) ("We review here a decision granting a motion to dismiss, and therefore must accept as true all the factual allegations in the complaint."); *Koutny v. Martin*, 530 F. Supp. 2d 84, 87 (D.D.C. 2007) ("[A] court accepts as true all of the factual allegations contained in the complaint and may also consider 'undisputed facts evidenced in the record.'" (internal citations omitted) (quoting *Mineta*, 333 F.3d at 198)).

Despite the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. United States Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted) (quoting *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001)), *aff'd*, 2008 WL 4068606 (D.C. Cir. Mar. 17, 2008). A court need not accept as true "a legal conclusion couched as a factual allegation" or an inference "unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal quotation marks omitted) (quoting *Papasam v. Allain*, 478 U.S. 265, 286 (1986)).

B. Failure to State a Claim under Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint is not sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "In evaluating a motion to dismiss, the Court must accept the

factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006).

When considering a Rule 12(b)(6) motion, courts may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint" or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks and citations omitted) (quoting *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002); *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009)). The court may also consider documents in the public record of which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### III. DISCUSSION

Defendants raise several inter-related arguments supporting their Motion. Although it is at times difficult to separate these arguments in the briefing, the Court identifies the distinct arguments and discusses them below.[3]

A. Mootness

First, Defendants argue that Plaintiffs' claims are moot because her visa application itself has already been adjudicated. *See* Defs.' Mot. at 14–17. In response, Plaintiffs explain that they are seeking adjudication specifically of her waiver eligibility, which they argue is part of the visa application process under the Proclamation. *See, e.g.*, Pls.' Opp'n at 6–7. This Court agrees that

---

[3] Defendants' Motion references a potential due process claim by Plaintiffs. Defs.' Mot. at 3. However, because Defendants do not develop this argument other than a brief mention in their preliminary statement, and because it is unclear whether Plaintiffs even allege a due process claim, the Court does not consider this argument here.

Plaintiffs claims are not moot because Plaintiff Sharei's waiver eligibility has not yet been adjudicated and she does not seek to have Defendants readjudicate the initial denial of her visa application.

The jurisdiction of federal courts is limited by Article III of the Constitution to the adjudication of actual, ongoing cases or controversies. This limitation "gives rise to the doctrines of standing and mootness." *Foretich v. United States*, 351 F.3d 1198, 1210 (D.C. Cir. 2003); *see Sierra Club v. Jackson*, 648 F.3d 848, 852 (D.C. Cir. 2011) ("Article III of the Constitution limits the federal courts to adjudication of actual, ongoing controversies."). Pursuant to the mootness doctrine, it "is not enough that the initial requirements of standing and ripeness have been satisfied; the suit must remain alive throughout the course of litigation, to the moment of final appellate disposition. If events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot." *People for the Ethical Treatment of Animals, Inc. v. United States Fish & Wildlife Serv.*, 59 F. Supp. 3d 91, 95 (D.D.C. 2014) (internal quotation marks and citations omitted) (quoting 13B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3533 (3d ed. 2014); *McBryde v. Comm. to Review Circuit Council Conduct and Disability Orders of the Judicial Conference of the U.S.*, 264 F.3d 52, 55 (D.C. Cir. 2001)). "A case is moot when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated in circumstances where it becomes impossible for the court to grant any effectual relief whatever to the prevailing party." *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1135 (D.C. Cir. 2009) (internal quotation marks omitted) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)).

Defendants argue that Plaintiffs' claims are moot here because Plaintiff Sharei's "visa was already denied." Defs.' Mot. at 16. Defendants, however, misunderstand the relief that Plaintiffs

are seeking. Plaintiffs make clear, both in their Complaint and in their briefing on this Motion, that they are specifically seeking adjudication of Plaintiff Sharei's waiver eligibility. *See, e.g.*, Pls.' Opp'n at 5–6. Indeed, Plaintiffs acknowledge that Plaintiff Sharei's initial visa application was refused. *See* Compl. ¶ 61 (explaining that Plaintiff Sharei was "given refusal notice under section 212(f) of the US Immigration and Nationality Act" and that her "visa application was refused under the Presidential Proclamation"); Pls.' Opp'n at 5 ("Plaintiffs do not dispute that Plaintiff Sharei received a 212(f) refusal of her visa application, but clearly that refusal is not final and her application remains pending further administrative processing."). To the extent that Plaintiffs phrase their requested relief as adjudication of her visa application, Plaintiffs do so because they view the waiver eligibility determination as part of the visa application process. *See, e.g.*, Compl. ¶ 63 (explaining that online visa status check lists her case as "currently undergoing necessary administrative process"); *id.* at Prayer for Relief ¶¶ A–C (including "waiver eligibility" specifically in relief requested); Pls.' Opp'n at 5 ("This deliberate and intentional language clearly indicates that waiver consideration is *part of the visa adjudication process* and must be completed before a final decision can be made.").

In light of Plaintiffs' clarifications in their Complaint and briefing, this Court need not consider at this juncture whether the waiver eligibility determination should be considered part of the overall visa adjudication process. According to Plaintiffs, they primarily seek injunctive relief related to Plaintiff Sharei's waiver eligibility. That they view this as part of the broader visa adjudication process is irrelevant to this argument because Defendants admit that her waiver eligibility has not yet been determined. *See* Defs.' Mot. at 2 ("Plaintiff Sharei's application for a waiver remains under consideration[.]"); *see also* Dybdahl Decl., ECF No. 10-3, ¶ 6 ("Ms. Sharei

is undergoing consideration for a waiver of the Proclamation's entry restrictions.").  Accordingly, her claims seeking adjudication of that eligibility are not moot.

B. Consular Nonreviewability

Defendants' second major argument is that Plaintiffs' claim is not reviewable under the consular nonreviewability doctrine.  But Defendants overlook that the consular nonreviewability doctrine applies only to decisions actually made by consular officers; Plaintiffs are not challenging any such decisions here.

"Normally a consular official's discretionary decision to grant or deny a visa petition is not subject to judicial review."  *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1997).  Courts do not typically have subject-matter jurisdiction to review decisions of consular officers to deny visas because the INA confers "upon consular officers [the] exclusive authority to review applications for visas."  *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156–57 (D.C. Cir. 1999).  Under this doctrine, called consular nonreviewability, "a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise," as matters of "policy toward aliens are . . . so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference."  *Id.* at 1159 (internal quotation marks omitted) (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952)); *see also United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) ("[I]t is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien.").  But when the suit challenges inaction, "as opposed to a decision taken within the consul's discretion," there is jurisdiction.  *Patel*, 134 F.3d at 931–32; *see Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268, 290 (D.D.C. 2016) ("*Nine Iraqi Allies*") ("[T]he doctrine of consular

nonreviewability is not triggered until a consular officer has made a <u>decision</u> with respect to a particular visa application.").

That is what Plaintiffs seek here. Plaintiffs do not challenge the initial denial of Plaintiff Sharei's visa application. *See, e.g.*, Pls.' Opp'n at 3 (explaining that Plaintiffs' claims specifically target "indefinite delay in the *adjudication*" of her visa application). Instead, in Plaintiffs' own words, they challenge "not a visa denial, but rather the failure of Defendants to, properly and within a reasonable time, perform their mandatory, non-discretionary duty to adjudicate Plaintiff Sharei's visa application and waiver, which clearly remains pending and has not been denied." *Id.* at 4. As explained above, Plaintiffs refer to the visa application process as a whole but are specifically concerned with Plaintiff Sharei's waiver eligibility, which they view as part of the overall visa application process. *See id.* Defendants provide scant support for their extension of the consular nonreviewability doctrine from judicial review of visa decisions to the alleged withholding of a visa or waiver decision. Their references to *Trump v. Hawaii*, in which the Supreme Court upheld the Proclamation against several challenges and discussed the discretion given to the President in the INA, are inapposite, as that discussion did not touch on the consular nonreviewability doctrine. *See* Defs.' Mot. at 8–9 (acknowledging that Supreme Court "had no occasion to reach" consular nonreviewability doctrine).

Nor does the doctrine suggest that such an extension is appropriate. The limited scope of the doctrine exists because "it protects the prerogative of the political branches to regulate the manner in which aliens may enter the United States." *Nine Iraqi Allies*, 168 F. Supp. 3d at 290. But "[w]hen the Government simply declines to provide a decision in the manner provided by Congress, it is not exercising its prerogative to grant or deny applications but failing to act at all." *Id.* at 290–91. The doctrine's underlying purpose is not served by extending it to this context, and

this Court rejects Defendants' invitation to do so here.  *See Am. Acad. of Religion v. Chertoff*, 463 F. Supp. 2d 400, 421 (S.D.N.Y. 2006) ("But the wide latitude given the Executive to grant or deny a visa application—a discretion bounded only by the U.S. Constitution and Congressional mandate—does not include the authority to refuse to adjudicate a visa application.").  Because of these principles, and because waiver decisions are not discretionary as discussed below, this argument is unpersuasive.  *See Didban v. Pompeo*, No. 19-CV-881 (CRC), 2020 WL 224517, at *4 (D.D.C. Jan. 15, 2020) (finding that consular nonreviewability doctrine did not apply to case alleging unreasonable delay of waiver eligibility decision); *Motaghedi v. Pompeo*, No. 119CV01466LJOSKO, 2020 WL 207155, at *8 (E.D. Cal. Jan. 14, 2020) (finding that consular nonreviewability doctrine did not apply to waiver delay challenge and rejecting argument that consular nonreviewability doctrine extends to whether waiver decision must be made).

## C. Committed to Agency Discretion

Defendants next argue that Plaintiffs' claims cannot succeed because they are challenging agency action "committed to agency discretion by law," which is exempted from review under the APA.  *See* Defs.' Mot. at 10 (citing 5 U.S.C. § 701(a)(2)).  Defendants appear to suggest the entire waiver program is committed to agency discretion in addition to decisions on individual waivers.  *See id.* ("Rather, the waiver program is governed exclusively by the Proclamation—a presidential action that is not subject to the APA.").  Neither argument, however, is persuasive.

The APA provides for judicial review of certain agency actions and requires the reviewing court to set aside any "agency action, findings, and conclusions" found to be, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  However, judicial review is not available where the agency action "is committed to agency discretion by law."  *Id.* § 701(a)(2).  The Supreme Court has articulated as least two

scenarios in which this exclusion applies: (1) "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (internal quotation marks omitted), and (2) when "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). "Agency actions in these circumstances are unreviewable because the courts have no legal norms pursuant to which to evaluate the challenged action, and thus no concrete limitations to impose on the agency's exercise of discretion." *Sierra Club v. Jackson*, 648 F.3d 848, 855 (D.C. Cir. 2011) (internal quotation marks omitted).

Section 701(a)(2) "provides a 'very narrow exception' that applies only in 'rare instances.'" *Cody v. Cox*, 509 F.3d 606, 610 (D.C. Cir. 2007) (quoting *Volpe*, 401 U.S. at 410). Courts "begin with the strong presumption that Congress intends judicial review of administrative action, and that the court will not deny review 'unless there is persuasive reason to believe that such was the purpose of Congress.'" *Ramah Navajo Sch. Bd., Inc. v. Babbitt*, 87 F.3d 1338, 1343–44 (D.C. Cir. 1996) (citation omitted) (quoting *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1401 (D.C. Cir. 1995)). To determine whether an action is committed to agency discretion, courts consider "both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing that action." *Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir. 2006) (internal quotation marks omitted).

Defendants here first suggest that because the Proclamation is not subject to the APA, and because it was upheld against certain challenges by the Supreme Court, all decisions made under it—such as waiver decisions—are similarly not reviewable. *See* Defs.' Mot. at 10; Defs.' Reply at 4. Defendants present no authority that sufficiently supports this sweeping assertion. The

"committed to agency discretion" exception has consistently been recognized, in the Supreme Court, the D.C. Circuit, and elsewhere, as a "very narrow exception." *Cody*, 509 F.3d at 610 (internal quotation marks omitted).

Nor does the exception apply here, as there are meaningful standards and law to apply. Defendants propose that because there is no "statutory or regulatory entitlement to any particular process by which or timeframe within which an applicant is considered for waiver," the committed to agency discretion exception applies. Defs.' Mot. at 10. Plaintiffs do not contest that there is no strict timeframe set by the Proclamation or agency guidance for processing waivers. Instead, Plaintiffs argue that the general APA reasonableness standard governs the timeframe and that, while the ultimate decision of whether to grant a visa is discretionary, the agency has no discretion whether to consider waiver eligibility. *See* Pls.' Opp'n at 8–18. The Court agrees with Plaintiffs on both points.

### 1. Reasonable Timeframe

Sections 555(b) and 706(1) of the APA, upon which Plaintiffs rely, *see, e.g.*, *id.* at 9, generally require agencies to act within a reasonable time. Cases like this one that target agency action unreasonably delayed turn on "whether the agency's delay is so egregious as to warrant mandamus." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (internal quotation marks omitted) (quoting *Telecommc'ns Research & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 79 (D.C. Cir. 1984)). "There is 'no *per se* rule as to how long is too long' to wait for agency action, but a reasonable time for agency action is typically counted in weeks or months, not years." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (citation omitted) (quoting *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992)). In considering whether agency delay is unreasonable, courts in this circuit consider six factors, which are:

(1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (internal quotation marks omitted). The D.C. Circuit has explained that the first factor—that "the time agencies take to make decisions must be governed by a rule of reason"—is the most important. *In re Core Commc'ns Inc.*, 531 F.3d at 849 (internal quotation marks omitted).

At the motion to dismiss stage, this Court need not consider whether the agency delay alleged here is unreasonable. Undergoing such a fact-specific inquiry at this stage would be premature.[4] *See, e.g.*, *M.J.L. v. McAleenan*, No. A-19-CV-00477-LY, 2019 WL 6039971, at *6 (W.D. Tex. Nov. 13, 2019) (finding that "at the motion to dismiss stage and before discovery has been completed," it would be "premature to address these [*TRAC*] factors"); *Hamandi v. Chertoff*, 550 F. Supp. 2d 46, 54 (D.D.C. 2008) ("While the court has jurisdiction over USCIS, the determination of whether an agency's delay is unreasonable is a fact specific inquiry that is premature at this stage of the proceedings."); *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) ("Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court.").

---

[4] Defendants separately argue that Plaintiffs' claims must be dismissed because the delay alleged is not unreasonable. *See* Defs.' Mot. at 12–13. As the Court finds that analyzing whether the delay was unreasonable would be premature at the motion to dismiss stage and before discovery has been completed, it does not reach this argument in this Memorandum Opinion.

However, these factors shed light on what is required for Plaintiffs' claims to survive Defendants' arguments.  In short, Defendants argue that there is no timeframe that this Court can apply to consider whether the action is unreasonably delayed.  But that is not the case.  There does not need to be a more specific timeframe for a claim brought under the APA other than the reasonableness standard, and the six related factors, discussed above.  *See Motaghedi*, 2020 WL 207155, at *7 ("The absence of any standard upon which to frame a timing requirement is not unusual in APA unreasonable delay cases. . . . [the] framework for evaluating such claims takes this into account.").  Defendants have provided no reason why this standard does not apply in this case as well.  As there are meaningful standards and law to apply here, the committed to agency discretion exception is inapplicable with respect to the timeframe.  *See id.* at *8–*9 (applying same standard in waiver eligibility delay context); *Yavari v. Pompeo*, No. 2:19-CV-02524-SVW-JC, 2019 WL 6720995, at *5 (C.D. Cal. Oct. 10, 2019) (applying same standard in waiver eligibility delay context and noting that "[c]ourts generally analyze these two statutory requirements ('within a reasonable time' [under APA Section 555(b)] and 'unreasonable delay' [under Section 706(1)]) under the same standard" (quoting *In re Pesticide Action Network N. Am., Nat. Res. Def. Council, Inc.*, 798 F.3d 809, 813 (9th Cir. 2015))).

### 2. Duty to Consider Waivers

Moreover, Defendants suggest that there is no mandatory duty to determine waiver eligibility for applicants.  Contrary to Defendants' arguments, Plaintiffs have sufficiently demonstrated that the agency does not have discretion on whether to consider certain individuals for waivers.  This is made clear not only by the text of the Proclamation itself, but also by the guidance issued regarding the waiver process.  The Proclamation explains that waivers "may" be granted "on a case-by-case basis."  Proclamation § 3(c).  It requires the Secretary of State and the

Secretary of Homeland Security to "adopt guidance addressing the circumstances in which waivers may be appropriate for foreign nationals seeking entry as immigrants or nonimmigrants." *Id.* § 3(c). It goes on to specify that this guidance "shall address the standards, policies, and procedures" for determining whether foreign nationals satisfy the discretionary waiver requirements. *Id.* § 3(c)(ii).

The Department of State's internal guidance discusses the waiver program. Exhibit A to Plaintiffs' Opposition is internal guidance issued by the agency on January 23, 2018; it is titled "Operational Q&As on P.P. 6645 in light of the U.S. Supreme Court orders of December 4, 2017, lifting lower court injunctions and pursuant to guidance in 17 STATE 97682." Pls.' Exhibits Ex. A at 1. Defendants do not challenge—or even specifically address—Exhibit A. At several points, the guidance makes clear that when an applicant meets certain requirements, they must be considered for a waiver. For example, one question and answer pair states that:

> Q4: **Does the consular officer have to consider a waiver for every applicant who is subject to the restrictions of the P.P., otherwise eligible for a visa and to which an exception does not apply?**
>
> A: **Yes, each applicant who meets the conditions described in the question posed above must be considered for a waiver, based on the purpose of travel and any other information provided by the applicant.** However, if the applicant fails to meet any one of the three waiver criteria outlined in PP 9645, the officer may proceed to refuse the case under refusal code EO17. Consular officers should check the appropriate box on the visa denial letter given to applicants subject to the P.P., indicating either that a waiver will not be granted or that waiver eligibility will be reviewed.

Pls.' Exhibits Ex. A at 8 (emphasis added). In response to a question regarding "how long . . . it take[s] to issue a waiver," the guidance explains that "[t]he granting of a waiver under the P.P. is a decision that is made by the consular officer and the manager **as part of the adjudication**." *Id.* Ex. A at 20 (emphasis added). Later in the document, when discussing visa refusals, the guidance explains that before an applicant can be refused under the Proclamation, the officer "must

17

determine whether the applicant may qualify for a waiver." *Id.* Ex. A at 26. Officers must provide applicants with a "refusal letter indicating either that a waiver will not be granted or waiver eligibility is under review," and the internal guidance provides exact language to be used in those letters. *Id.* at 26–27. That language explains that applicants under waiver consideration "**will** be contacted with a final determination on [their] visa application[s] as soon as practicable." *Id.* Ex. A at 27 (emphasis added). This exact language was present in the letter that Plaintiff Sharei received. *See* ECF No. 1-5. Taken together, the guidance reflects the agency's view that for those applicants that meet certain criteria and are under waiver consideration, a decision on the waiver must ultimately be made.

The Department of State's external guidance, issued after the Supreme Court's June 26, 2018 decision in *Trump v. Hawaii* and which is available on the agency's website, demonstrates the same.[5] For instance, in response to the frequently asked question "What immigrant visa classes are subject to the Proclamation?", the guidance includes the following language: "A consular officer **will carefully review each case to determine** whether the applicant is affected by the Proclamation and, if so, **whether the case qualifies for** an exception or **a waiver**." The guidance contains nearly identical language explaining that consular officers "will carefully review each

[5] This webpage is titled "June 26 Supreme Court Decision on Presidential Proclamation 9645," and is available at https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/presidential-proclamation-archive/june_26_supreme_court_decision_on_presidential_proclamation 9645.html (last accessed Jan. 22, 2020). Under Federal Rule of Evidence 201, a court can take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction" or "(2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Moreover, a court "may take judicial notice on its own" and "at any stage of the proceeding." Fed. R. Evid. 201(c)–(d). "Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies." *Pharm. Research & Mfrs. of Am. v. United States Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) (collecting cases). The Court follows their lead and does the same here for the facts from this webpage discussed in the body of the Memorandum Opinion. *See id.*

case to determine whether . . . the applicant qualifies for an exception or a waiver" in answers to five distinct questions. Confirmation of this understanding also comes from a letter dated February 22, 2018 from Mary K. Waters, Assistant Secretary of Legislative Affairs in the Department of State, to Senator Chris Van Hollen, *available at* https://www.aila.org/infonet/dos-responds-to-senator-van-hollens-concerns, which states that "[e]ach applicant who meets the conditions set forth in section 3(c) of the Proclamation must be considered for a waiver," *id.* at 2. *See* Compl. ¶¶ 43–48 (referencing and discussing letter).

Furthermore, the Supreme Court's opinion in *Trump v. Hawaii* further reflects this understanding that consular officers must consider—and ultimately determine—whether applicants qualify for a waiver. *See, e.g.*, *Trump v. Hawaii*, 138 S. Ct. at 2422 (explaining that "consular officers are to consider in each admissibility determination whether the alien demonstrates" requirements for waiver); *see also Motaghedi*, 2020 WL 207155, at *7 ("As several courts have recognized, in upholding the constitutionality of PP 9645, the Supreme Court relied in part on the waiver program[.]"); *Emami v. Nielsen*, 365 F. Supp. 3d 1009, 1013 (N.D. Cal. 2019) ("The allowance for waivers in the Proclamation was an important reason why the five-justice majority upheld it as serving a legitimate national security interest.").

Defendants do not respond directly to the guidance referenced by Plaintiffs, other than to suggest that there is no entitlement to a decision on a waiver because there is discretion on whether a waiver may be granted, and that discretion is committed entirely to the executive branch. *See* Defs.' Reply at 3–7. For example, Defendants propose that "[t]he processing of a waiver application is committed entirely to agency discretion by Presidential Proclamation 9645—a presidential action that is not subject to the APA or Mandamus given the absence of a

nondiscretionary duty." Defs.' Mot. at 11. They also suggest that the Proclamation's disclaimer that it does not create private rights precludes Plaintiffs from bringing suit.[6] Defs.' Mot. at 12.

But Defendants' arguments overlook several important points. First, although "the APA does not expressly allow review of the President's actions," *Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992), Plaintiffs here do not challenge the President's actions and instead challenge agency adherence to the Proclamation itself and agency guidance. *See, e.g.*, Compl. ¶ 114 (referencing *Accardi* doctrine relating to agency adherence to guidance). While this circuit has not clearly determined whether action taken pursuant to the Proclamation is reviewable, the Ninth Circuit has persuasively decided that "officer suits against executive branch officials charged with carrying out the instructions contained in Proclamation 9645" are APA-reviewable. *Yavari*, 2019 WL 6720995, at *6 (finding waiver eligibility challenge reviewable under APA); *see Hawaii v. Trump*, 878 F.3d 662, 681 (9th Cir. 2017) ("[B]ecause these agencies have consummated their implementation of the Proclamation, from which legal consequences will flow, their actions are final and therefore reviewable under the APA." (internal quotation marks and alternations omitted) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997))), *rev'd and remanded on other grounds*, 138 S. Ct. 2392 (2018); *cf. Chamber of Commerce of United States v. Reich*, 74 F.3d 1322, 1326 (D.C. Cir. 1996) (finding that agency regulations pursuant to executive order were reviewable under APA); *Tulare Cty. v. Bush*, 306 F.3d 1138, 1143 (D.C. Cir. 2002) (suggesting that challenge to agency action pursuant to presidential proclamation might have been reviewable under APA if

---

[6] Note that Defendants do not clearly separate their "committed to agency discretion" argument from their broader consular nonreviewability argument and their suggestion that the Proclamation and such presidential actions more generally are not reviewable under the APA, which makes untangling the support and reasoning underlying Defendants' arguments more difficult. *See, e.g.*, Defs. Mot. at 10–12. The Court therefore addresses some of these arguments together in this Memorandum Opinion.

plaintiffs had alleged with sufficient specificity); *O.A. v. Trump*, 404 F. Supp. 3d 109, 147 (D.D.C. 2019) (finding that action was reviewable under APA because rule at issue was promulgated pursuant to presidential proclamation).

Defendants' arguments in this vein also ignore that an agency may be bound by its own policies, and that Plaintiffs here are arguing (among other things) that Defendants are bound by their own implementing policies to issue waiver decisions. *See, e.g.*, Pls.' Opp'n 4–6, 8–9, 14–15; *see also* Compl. ¶ 114 (referencing *Accardi* doctrine). In fact, "[i]t is well settled that an agency, even one that enjoys broad discretion, must adhere to voluntarily adopted, binding policies that limit its discretion." *Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987). This doctrine stems from the case of *United States ex rel. Accardi v. Shaunessy*, 347 U.S. 260 (1954). "*Accardi* has come to stand for the proposition that agencies may not violate their own rules and regulations to the prejudice of others." *Battle v. F.A.A.*, 393 F.3d 1330, 1336 (D.C. Cir. 2005); *see Steenholdt v. F.A.A.*, 314 F.3d 633, 639 (D.C. Cir. 2003) ("The *Accardi* doctrine requires federal agencies to follow their own rules, even gratuitous procedural rules that limit otherwise discretionary actions."); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 335–38 (D.D.C. 2018) (explaining connection between *Accardi* doctrine and APA cases). In fact, "in the immigration context," courts have found that "the *Accardi* doctrine's 'ambit is not limited to rules attaining the status of formal regulation,' and that it can be applied to internal agency guidance." *Damus*, 313 F. Supp. 3d at 336 (quoting *Montilla v. INS*, 926 F.2d 162, 167 (2d Cir. 1991)). The D.C. Circuit has explained that "an agency pronouncement is transformed into a binding norm if so intended by the agency," and to determine agency intent, a court must examine "'the statement's language, the context, and any available extrinsic evidence.'" *Padula*, 822 F.2d at 100.

If an APA claim premised in part on the agency's own guidance and pronouncements is possible, the question becomes whether Plaintiffs have sufficiently pleaded such a claim. They have. Most importantly, Plaintiffs have included in their pleading the internal guidance adopted by the Department of State as well as the February 22, 2018 letter. Each of these three pronouncements from the agency treat waiver eligibility decisions as mandatory. The same is true of the agency's external guidance, which was specifically made public in such a way that applicants can access it. At bottom, then, the agency pronouncements at issue all states that officers do not have the discretion to never act on a waiver application. *See, e.g.*, *Najafi v. Pompeo*, No. 19-CV-05782-KAW, 2019 WL 6612222, at *5 (N.D. Cal. Dec. 5, 2019) (finding that "mandatory language" in agency guidance relating to Proclamation "demonstrates a decision is required" on waivers and noting that "[t]o now argue that the waiver program requires no decision would be to render the waiver program illusory"). Considering that the agency has represented this in its internal guidance (which was intended to be used by its consular officers), its external guidance (which was intended to be accessed, and potentially relied upon, by applicants), in its argument to the Supreme Court (as reflected in the Supreme Court's opinion in *Trump v. Hawaii*), and in a letter sent to a member of Congress, the agency certainly intended to be bound by this guidance. *Cf. Emami*, 365 F. Supp. 3d at 1021 (finding that plaintiffs sufficiently alleged *Accardi* claim in broader challenge to waiver program).

Accordingly, Plaintiffs have sufficiently shown that the challenged decisions do not qualify for the committed to agency discretion exception under the APA. *Motaghedi*, 2020 WL 207155, at *6–*7 (finding that delayed waiver decisions were not committed to agency discretion); *Darchini v. Pompeo*, No. SACV191417JVSDFMX, 2019 WL 7195621, at *4 (C.D. Cal. Dec. 3, 2019) (finding that agency's guidance demonstrates that action is not committed to agency

discretion); *Yavari*, 2019 WL 6720995, at *7 (denying motion to dismiss on committed-to-agency-discretion grounds due to narrowness of exception); *Emami*, 365 F. Supp. 3d at 1018–19 (denying motion to dismiss similar claims in face of arguments that decisions are committed to agency discretion).

## D. Mandamus Act

Defendants also challenge Plaintiffs' claims brought under the Mandamus Act, 28 U.S.C. § 1361. The writ of mandamus is available "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A court may grant mandamus relief only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005) (internal quotation marks omitted). Because this Court found that it had jurisdiction under the APA, an alternative and adequate remedy is available to Plaintiffs, and the Court need not reach these arguments. *See Action All. of Senior Citizens v. Leavitt*, 483 F.3d 852, 858 (D.C. Cir. 2007) (noting that "the existence of an administrative remedy . . . preclude[d] the exercise of mandamus"); *Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 103 F. Supp. 3d 113, 120 n.6 (D.D.C. 2015) ("The Court need not reach the question of whether a writ of mandamus is available to compel NIGC to issue a decision since it finds it has APA jurisdiction over Count 1.").

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss. An appropriate Order accompanies this Memorandum Opinion.

Date:   January 22, 2020

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge